**AMERICAN STATES INSURANCE COMPANY et al.**

v.

**TOKAI–SEIKI (H.K.), LTD. et al.**

Court of Common Pleas of Ohio,
Miami County.

No. 94–169.

Decided May 27, 1997.

174

*Matthew J. Smith,* for plaintiffs.

*Freund, Freeze & Arnold* and *Stephen V. Freeze,* for defendants Inter–American Foods, Inc. and Kroger Co.

*Porter, Wright, Morris & Arthur* and *Thomas R. Pyper,* for defendant Tokai–Seiki (H.K.), Ltd.

*Cohen, Todd, Kite & Stanford* and *Michael R. Schmidt,* for defendants Hiraoka & Co. H.K. Ltd.

---

JEFFREY M. WELBAUM, Judge.

This matter came on for the court's consideration upon the filing of the motion to dismiss of defendants Inter–American Foods, Inc. and Kroger Company or, in the alternative, motion *in limine,* and motion for summary judgment filed November 4, 1996, and the motion *in limine* to preclude plaintiffs' evidence at trial based on plaintiffs' spoilation of evidence filed by defendant Tokai–Seiki (H.K.), Ltd. (hereinafter referred to as "THK") on November 4, 1996. Plaintiffs, American States Insurance Company et al. ("plaintiff"), filed their consolidated memorandum in opposition to defendants' motion to dismiss, motion for summary judgment and motions *in limine,* on November 20, 1996. Defendant THK filed its reply memorandum on November 22, 1996. Defendant Inter–American Foods, Inc. and Kroger Company filed their reply memorandum on November 22. The plaintiffs filed their supplemental memorandum on November 27, 1996.

The facts regarding these motions begin with a fire that erupted on June 8, 1992, at the home of plaintiffs James and Tonya Macik. Mrs. Macik alleges the following sequence of events after a lighter allegedly associated with defendants erupted into a fireball in her hand. She instinctively flicked the lighter, which she observed dropping liquid fire, onto the carpet. The fire came in contact with some drapes, and the home burned.

Plaintiff, American States Insurance Company, insured the home and consequently began its investigation on the next day. Upon hearing Mrs. Macik's allegations, representatives of the insurance company concluded that a subrogation claim might be possible. Consequently, two days after the fire, James Gamm, a fire examiner, and an attorney were contacted to investigate and if necessary pursue the subrogation claim. The fire scene was inspected by

American States' claims adjusters, experts, and attorneys, along with the usual cadre of governmental fire persons and inspectors who put out the fire and did their followup investigation.

Gamm inspected the scene on June 10. Gamm was able to formulate an opinion as to the area of origin of the fire but not a point of origin. He narrowed the area of fire origin to an approximately ten-square-foot area where Mrs. Macik said she tossed the flaming lighter. He did not take any samples nor did he retain that area of the carpet.

He also observed "fingers" on the side of the hot tub facing the front outside wall adjacent to the ten-foot-square origin area. These were described as burned areas which started at the top edge of the hot tub and ran down the outside. Each finger was about four to six inches long; they covered one side of the hot tub.

Although he did not initially form an opinion as to what these were, after talking to Mrs. Macik he concluded that they were caused by burning butane from the lighter as it was flying across the room. He searched for pieces of the lighter in the debris but could not find any. Notwithstanding the foregoing, he did not remove the carpet or take samples to determine the presence of an accelerant. He did not retain, take samples from, or photograph the burn marks on the hot tub.

Although Mrs. Macik was initially unsure of where she bought the lighter, on July 2, she bought some lighters at a Kroger store. By July 8, she became certain that Kroger is where she bought the exploding lighter. American States did not inform Kroger of the allegations to allow it to inspect the fire scene because of American States' misunderstanding that she bought the exploding lighter at Odd Lots. The fire scene was cleared by plaintiffs on or before July 21.

Defendants' experts say they probably could have eliminated a butane lighter as the cause of the fire if they had had the same opportunity to inspect the scene. They draw particular attention to the ten-foot section of carpet thought to be the area of origin, the mysterious hot tub finger burns, the curtains, and the failure to find metal parts of the lighter in the debris.

■ In this case there was no protective order prohibiting destruction of the fire scene at the time it was cleared. This is a consideration when balancing the equities in this case. However, defensive spoliation principles do apply by means of a motion under Civ.R. 37, requiring the court to fashion a just remedy. *Bright v. Ford Motor Co.* (1990), 63 Ohio App.3d 256, 578 N.E.2d 547; *Russo v. Goodyear Tire & Rubber Co.* (1987), 36 Ohio App.3d 175, 521 N.E.2d 1116; *Travelers Ins. Co. v. Dayton Power & Light Co.* (1996), 76 Ohio Misc.2d 17, 663

N.E.2d 1383; *Cincinnati Ins. Co. v. Gen. Motors Corp.* (Oct. 28, 1994), Ottawa App. No. 94–OT–017, unreported, 1994 WL 590566; *Cincinnati Ins. Co. v. Synergy Gas, Inc.* (Ala.1991), 585 So.2d 822; *Shelbyville Mut. Ins. Co. v. Sunbeam Leisure Products Co.* (1994), 262 Ill.App.3d 636, 199 Ill.Dec. 965, 634 N.E.2d 1319; *Graves v. Daley* (1988), 172 Ill.App.3d 35, 122 Ill.Dec. 420, 526 N.E.2d 679.

▪ ■ The court further finds that at the time there was no intent on the part of plaintiffs or their agents to willfully destroy evidence for the purpose of depriving defendants of evidence at trial. However, negligent or inadvertent destruction of evidence is sufficient to trigger sanctions where the opposing party is disadvantaged by the loss. *Farley Metals, Inc. v. Barber Colman Co.* (1994), 269 Ill.App.3d 104, 206 Ill.Dec. 712, 645 N.E.2d 964, 968. Where the loss of evidence is belated, a court should not dwell on intent but, rather, focus on the importance of information legitimately sought and which is unavailable as a result of the destruction of evidence. *Farley Metals, Inc., supra.*

■ The intent of the offending party, the level of prejudice, and the reasonableness of the offending party's action must all be balanced in fashioning a just remedy. The relative importance of the information denied the opposing party bears directly on reasonableness of the offending party's action and the resulting prejudice. The issue arises whether it was foreseeable that the evidence made unavailable would be very relevant and therefore falling within the scope of items worthy of retention for inspection. *Shelbyville Mut. Ins. Co. v. Sunbeam Leisure Products Co., supra; Travelers Ins. Co. v. Dayton Power & Light Co, supra.*

The relative importance of the evidence in addition to its mere relevance must be weighed in fashioning a just result. The loss of an essential item of evidence is far more prejudicial than a mere relevant piece of evidence. Almost any item found at a fire scene is arguably relevant. Obviously, not all such items are foreseeably essential or foreseeably relevant. Not all items arguably relevant at a fire scene may practically be retained. Consequently, the court must determine the reasonableness of the offending party's action in fashioning a just result.

■ The court finds that plaintiffs, along with the government investigators, took appropriate steps in good faith to search for any remains of the alleged lighter. Plaintiffs were motivated to find the lighter, and failed, for any number of benign reasons. If the alleged lighter was found, it was never in the possession of the plaintiffs. The court finds from the information presented that the curtains were entirely destroyed by the fire and the carpet where the fire originated was substantially destroyed. As to these items, this case is distinguishable from the cases cited where sanctions were imposed for the destruction

of particular items of evidence recognized to be highly relevant or essential that were in the possession or control of the offending party.

Nonetheless, defendants-movants contend that the entire fire scene should have been preserved to allow them to examine the debris in an effort to eliminate the alleged lighter as the source of the fire. Under the circumstances of this case, the court finds that this would be unreasonable and therefore not required. The rubble and debris of the entire fire scene were more than a source of evidence. They were the remains of a home to be rebuilt and constituted a health hazard. The Maciks could not be reasonably required to live in a motel for an even more extended period of time while the entire group of potential future litigants was ferreted out, notified, and given an opportunity to inspect the fire scene.

█ The court finds that at the time the carpet was made unavailable, plaintiffs or their agents knew or should have known that the remains of the carpet and the hot tub frame would be particularly relevant in a suit. An awareness by plaintiffs or their agents that future litigation would likely result is present in this case. The amount of the claim involved, the prompt response by plaintiff sending a fire investigator and attorney to the scene to determine the likely cause of the fire, the known identity of one defendant, and the other facts and circumstances of the case all weigh in favor of this awareness.

It may very well be that plaintiff's agent did not conclude that the carpet and the hot tub frame were worthy of retention or documentation as evidence relating to the source of the fire. However, the probable importance of the fire-origination area of the carpet and the hot tub frame in resolving fault was foreseeable from a neutral point of view. The carpet within the fire origination area and the hot tub frame were inextricably connected in location and damage to the extent that a reasonable investigator should have foreseen that the remaining carpet and hot tub frame should have been at least extensively documented if not extensively sampled, retained, and preserved for trial, or at least until inspected by movants-defendants prior to their destruction.

For purposes of ascertaining a point of reference, a comparison may be made to the case of *Shelbyville Mut. Ins. Co. v. Sunbeam Leisure Products Co., Inc.*, *supra*, 262 Ill. App.3d 636, 199 Ill.Dec. 965, 634 N.E.2d at 1322. In *Shelbyville*, plaintiff's expert discarded a wooden grill frame which could have provided alternate sources of the cause of the fire. Plaintiffs' experts determined that defendants' grill assembly was the cause of the fire and discarded the wooden frame which held the grill. Defendants' experts were deprived of the opportunity to examine the wooden frame, which the court concluded may well have provided alternative causes of the fire and could have reasonably rebutted the opposing expert's theory and bolstered the defense opinions as to the alternate sources of

the fire. The court held that defendants were effectively foreclosed from using possible affirmative defenses concerning what may have been the actual cause of the fire. 262 Ill. App.3d at 643, 199 Ill.Dec. 965, 634 N.E.2d at 1324. The evidence at issue here is not as essential as and less probative than the wooden grill frame in *Shelbyville, supra.*

■ Although not all items arguably relevant at a fire scene are worthy of retention, sampling, or documentation, when the item made unavailable by the offending party is inextricably connected to the evidence which the offending party believes to have caused the fire and if its importance is foreseeable, such evidence should be retained for inspection until the opposing party has a reasonable opportunity, after notice, to conduct an examination by its experts. *Hirsch v. Gen. Motors Corp.* (1993), 266 N.J.Super 222, 628 A.2d 1108. The carpet remains and hot tub frame could have practically been retained and preserved, or at the least extensively documented by detailed photographs, samples, or the like.

■ The plaintiff's failure to adequately preserve the evidence of the origin of the fire in this case is sanctionable under *Bright v. Ford Motor Co., supra.* However, the court must impose a sanction that is proportionate to the seriousness of the infraction under the facts of this particular case. The court is aware that it should impose the least severe sanction that effectively removes prejudice caused by the sanctioned party's wrongdoing. *Transamerica Ins. Group v. Maytag, Inc.* (1994), 99 Ohio App.3d 203, 650 N.E.2d 169; *Travelers Ins. Co. v. Dayton Power & Light Co, supra.*

In fashioning a remedy that is fair and equitable, the court focuses on the effect of the disposal or lack of documentation or testing and how it has adversely affected defendants. The court, in fashioning a remedy, intends to place both parties on a level playing field. In formulating a remedy, the court notes that defense experts have not been prevented from forming an opinion as to the cause of the fire.

The court notes that unlike the metal pieces of the alleged lighter, which were never found, the disposed carpeting and hot tub frame were available. These available items would have been helpful to bolster the opinions of the defense experts. The court notes that although a videotape recording and photographs were taken of the fire scene, they are of no assistance in determining whether the fire was caused by the alleged lighter. Where one party has control of a fire scene which is cleared before an adverse party has access to inspect it, the party in control of the scene has a responsibility commensurate with its expertise and resources to take reasonable measures to preserve highly relevant evidence or otherwise adequately document it.

The court finds that the defense experts will be hindered to some degree in buttressing their conclusion that the accident happened because of some source other than their lighter without the tangible exhibits, sample testing, or definitive photographs. The court's purpose is to eliminate the prejudicial effect of the failure of plaintiffs by restoring the balance that failure has denied defendants. Attempting to quantify the level of prejudice suffered by defendants is difficult. It cannot be ascertained or balanced on a molecular level. The court's purpose is remedial under Civ.R. 37. Public policy favors adjudication on the merits whenever possible. *Transamerica Ins. Group v. Maytag, Inc., supra; Cincinnati Ins. Co. v. Synergy Gas, Inc., supra.*

The court finds from the foregoing that defendants have been prejudiced to some degree by the failure of plaintiffs to reasonably document the available evidence of fire origin commensurate with the circumstances and their level of expertise and experience. The deposition testimony establishes that it is likely the defendants was deprived of favorable evidence not otherwise obtainable as a result of the plaintiff's actions.

As a result of the foregoing, it is the order of the court that should the matter proceed to trial, upon request, the jury shall be instructed that if it finds that the discarded carpet or hot tub frame would be significant in reaching a conclusion as to the cause of the fire, it should infer that the evidence destroyed would have disclosed facts adverse to the plaintiffs. *Travelers Ins. Co. v. Dayton Power & Light Co, supra.*

Accordingly, the motion to dismiss and motion for summary judgment filed by defendants Inter–American Foods and Kroger Company on November 4, 1996, are overruled. The motions *in limine* filed by defendants Inter–American Foods, Kroger Company, and THK on November 4, 1996, are hereby granted in part, to the extent set forth in this order.

IT IS SO ORDERED.

*Judgment accordingly.*